# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| DAVID A. JAROSCAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:17-cv-91 |
| | ) |
| The Times of Northwest | ) |
| Indiana, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on six motions to dismiss: (1) the Motion to Dismiss, filed by Defendant, Aaron Ridgway, on April 13, 2017 (DE #25); (2) the Motion to Dismiss, filed by Defendants Town of Merrillville Police Department and Police Chief Joseph Petruch, on April 17, 2017 (DE #27); (3) the Motion to Dismiss, filed by Defendants Crown Point Police Department, Officer Stanko Gligic, Officer Robert Ballas, Officer Mille Knezevic, Officer D. Wilkins, Officer J. Burkholder, and Police Chief Pete Land, on April 24, 2017 (DE #30); (4) the Motion to Dismiss filed by Lee Publication, Inc. d/b/a The Times Media Company (improperly Named as "The Times of Northwest Indiana") and Reginald Edwards, on April 24, 2017 (DE #33); (5) the Motion to Dismiss, filed by Defendants Officers John Doe, on April 27, 2017 (DE #38); and (6) the Motion to Dismiss, filed by Defendants Lake County Sheriff's Department

and Sheriff John Buncich, on May 3, 2017 (DE #43).

For the reasons set forth below: the Motions to Dismiss (DE ## 25, 27, 30, 33, 38, and 43) are **GRANTED** as follows: the federal claims (Counts V, VI, VII, VIII, X, and XI) are **DISMISSED WITH PREJUDICE** and the state claims (Counts I, II, III, IV, and IX) are dismissed **WITHOUT PREJUDICE.**

BACKGROUND

Plaintiff, David A. Jaroscak, filed a complaint against numerous plaintiffs on February 27, 2017 (DE #1), all stemming from an occurrence at Jaroscak's house on March 1, 2015, when defendant, Theresa Ridgway, was delivering newspapers for the Times of Northwest Indiana, and got her vehicle stuck in the snow in Jaroscak's driveway. Theresa's husband, Aaron Ridgway (a police officer for the Town of Merrillville), got into a verbal confrontation with Jaroscak, Aaron Ridgway called the police, and Jaroscak was ultimately arrested by the Lake County Police two days later. Defendants have moved to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1] Each of the motions has been fully briefed and is ready for adjudication. Because the motions share the same nucleus of facts, for the sake of judicial economy, this Court has

---

[1] All defendants except Theresa Ridgway have filed motions to dismiss. The Court notes that the claims against Theresa Ridgway are only state law claims (Counts I and II).

consolidated these motions into one order.

DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations other than fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" that the pleader is entitled to relief. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

In order to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts must be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). However, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Facts

On March 1, 2015, around 6:00 a.m. in the morning, Jaroscak was in his home watching the news when he heard a thud on his front porch. (Compl. ¶ 24.) Thinking that the noise was simply the snow and cold he stayed in his home and continued watching the news. *Id.* About forty-five minutes later he took his dog outside when he noticed a car stuck in his driveway, with about half the car in his yard. (*Id.* ¶ 25.) Plaintiff's driveway is approximately 350 feet long, none of which was plowed, and the stuck car was approximately 100 feet from the street. (*Id.* ¶¶ 25-26.) The vehicle belonged to Theresa Ridgway, a co-defendant and the wife of Defendant, Aaron Ridgway. (*Id.* ¶ 27.) Theresa was delivering newspapers for The Times of Northwest Indiana ("The Times") the morning of the incident. (*Id.* ¶ 5.)

After seeing Theresa's stuck vehicle, Jaroscak noticed a SUV pull into his driveway. (*Id.* ¶¶ 27-28.) The SUV belonged to Reginald Edwards, a co-worker of Theresa's from The Times. (*Id.* ¶¶ 7, 33.) Edwards ended up getting his vehicle stuck as well. (*Id.* ¶ 28.) Plaintiff watched Theresa and Edwards attempt to free their vehicles for about twenty minutes, at which point he decided to put his dog back inside the house and approach the drivers to ask why they were at his home. (*Id.* ¶ 29.) Theresa told Jaroscak that she was delivering his newspaper, to which he responded that he doesn't

4

get the paper and that she was trespassing. (*Id.* ¶ 30.) Jaroscak asked Theresa and Edwards to both leave, and they responded by ignoring him. (*Id.* ¶ 32.) He then told the two of them "I can go get my shotgun or call the police." *Id.* Theresa responded by saying she would call the police. *Id.*

After telling Theresa that he could go get his shotgun or call the police, Jaroscak began walking back towards his front porch. (*Id.* ¶¶ 32-33.) He picked up the newspaper which Theresa delivered earlier that morning, walked back and placed the paper in Theresa's vehicle, and then went back inside his home. *Id.*

Sometime after 8:00 a.m., about an hour after Jaroscak first noticed that Theresa was stuck in his driveway, he heard a knock at his door and the doorbell. (*Id.* ¶¶ 25, 34.) He went to the door and saw a man in plain clothes, defendant Aaron Ridgway, who identified himself as the husband of the woman stuck in the driveway, to which Jaroscak responded "O.K." (*Id.* ¶¶ 35-36.) According to the complaint, Ridgway then "accused the Plaintiff of threatening his wife," "said he was a Crown Point Police Officer," and "proceeded to verbal[ly] threaten, scream, spit and yell[] at the Plaintiff through the Plaintiff's storm door." (*Id.* ¶ 37.) During this time, Plaintiff's storm door remained closed between them, and it was locked. (*Id.* ¶¶ 35-37.) Although the complaint alleges that Ridgway identified himself as a Crown Point Police Officer, he is actually a Police Officer of the Town of Merrillville, Indiana.

5

(*Id.* ¶¶ 38-39.) This conversation occurred on Jaroscak's porch, which was approximately 200 feet from Theresa and Reginald's stuck vehicles. (*Id.* ¶¶ 33, 38.) After exchanging words with Plaintiff, the complaint alleges Ridgway then called the police on his cell phone while standing on the Plaintiff's porch. (*Id.* ¶ 38.)

Plaintiff also alleges that at 8:30 a.m., he received a telephone call from the Crown Point Police Department, requesting that he go outside of his home because police officers were there. (*Id.* ¶ 40.) Plaintiff did not see any police officers at that time, and he did not go outside - instead, he requested the caller to send a supervisor to the door. (*Id.*) He received a second phone call at 8:39 a.m. from the Crown Point Police Department, requesting him to go outside of his home. (*Id.* ¶ 41.) Plaintiff saw officers standing by the woods, approximately 80 feet from his front porch. (*Id.* ¶ 42.) He proceeded to walk out onto his front porch and yell to the officers "where is the supervisor." (*Id.*) According to Plaintiff, the officers then drew their weapons, pointed them at Plaintiff, and yelled at him, so he retreated into his house. (*Id.*) Plaintiff then observed from inside the removal of the two stuck vehicles. (*Id.* ¶ 43.)

Plaintiff alleges he was arrested by Lake County Police officers two days later, on March 3, 2015. (*Id.* ¶ 50.) He was released after he posted bond in the amount of $500 to the City of Crown Point on the charge of Intimidation and another $500 at the

6

Lake County Jail for the charge of Resisting Law Enforcement. (*Id.* ¶ 54.) The charge of Resisting Law Enforcement was never filed against Jaroscak, and the charge of Intimidation was dismissed by the State on February 16, 2016. (*Id.* ¶¶ 54-55.)

In his complaint filed on February 27, 2017, Plaintiff alleges the following claims: (1) trespass against Lee Publication, Inc. d/b/a The Times Media Company (improperly Named as "The Times of Northwest Indiana") (hereinafter "the Times Defendants"), Theresa Ridgway, and Reginald Edwards (Count I); (2) slander against the Times Defendants, Theresa Ridgway, and Reginald Edwards (Count II); (3) trespass against Aaron Ridgway (Count III); (4) slander against Aaron Ridgway (Count IV); (5) violations of 42 U.S.C. 1983: failure to train, refusing or neglecting to prevent, against the Town of Merrillville Police Department and Chief of Police Joseph Petruch (Count V); (6) violations of 42 U.S.C. 1983: false arrest, against the Crown Point Police Department (Count VI); (7) violations of 42 U.S.C. 1983: detention and confinement, against the Crown Point Police Department (Count VII); (8) violations of 42 U.S.C. 1983: failure to train, refusing or neglecting to prevent, against the Crown Point Police Department and Chief of Police, Pete Land as Chief for the Crown Point Police Department (Count VIII); (9) trespass against the Crown Point Police Department (Count IX); (10) violations of 42 U.S.C. 1983: arrest, against the Lake County Sheriff's Department officers John Doe (Count X); and (11)

violations of 42 U.S.C. 1983: refusing or neglecting to prevent, against the Lake County Sheriff's Department and Sheriff John Buncich (Count XI).

This Court will begin its analysis with the federal claims.

<u>Federal Claims</u>

<u>42 U.S.C. section 1983: Failure to Train, Refusing or Neglecting to Prevent</u>

Plaintiff has stated claims for violation of 42 U.S.C. section 1983: failure to train, refusing or neglecting to prevent against: the Town of Merrillville Police Department and Chief of Police Joseph Petruch in his official capacity (Count V); the Crown Point Police Department and Chief of Police, Pete Land as Chief for the Crown Point Police Department in his official capacity (Count VIII); and the Lake County Sheriff's Department and Sheriff John Buncich in his official capacity (Count XI). Count V alleges "pursuant to official policy or custom," Defendants Joseph Petruch and the Town of Merrillville Police Department "failed to instruct, supervise, control and discipline" Officer Ridgway in his duties to refrain from unlawfully and maliciously arresting, imprisoning, using unreasonable force against, and entering the dwelling place of a citizen without a warrant and "fail[ed] to train the officer with respect to conduct when not on duty." (Compl. ¶ 76.) Count VIII contains similar language against the Crown Point Police Department (*Id.* ¶ 89), and Count XI about the Lake County Sheriff's

Department (*Id.* ¶ 105).

Defendant Police Departments and the Sheriff's Department argue that the claims for failure to adequately train their officers and neglecting to prevent should be dismissed for failure to state a claim under *Monell v. Dep't of Soc. Servs. Of New York*, 436 U.S. 658, 694 (1978), because Plaintiff has failed to provide any factual basis for those claims. In his response, Plaintiff claims he has met the pleading standard.

As to the claims against the Police Departments and the Sheriff's Department, it is well settled that a government entity cannot be held vicariously liable under section 1983 for the acts of its employees. *Monell,* 436 U.S. at 694; *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989). In order for a municipality to be held liable under section 1983, the municipality must have adopted a policy, practice, or custom that deprived the plaintiff of his constitutional rights. *Bennett v. Roberts*, 295 F.3d 687, 699 (7th Cir. 2002) (citing *Monell*, 436 U.S. at 694).

In order to demonstrate that a municipal policy has violated his civil rights under section 1983, Plaintiff must allege that:

> (1) the [municipality] had an express policy that, when enforced, causes a constitutional deprivation; (2) the [municipality] had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final

> policymaking authority.

*McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citation omitted). Further, a municipality may only be liable under section 1983 if it is the "moving force behind the injury." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405 (1997). In other words, to prevail on a claim against the Departments, Plaintiff must ultimately demonstrate that Plaintiff's constitutional rights were violated and that the Department's policy or custom of failing to train its employees caused the constitutional violation. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 123 (1992).

While it is true that there is no heightened pleading standard for municipal liability under Section 1983, a complaint must still satisfy the plausibility standard set forth in *Twombly* and *Iqbal*. Boilerplate allegations of municipal customs or policies are insufficient to state a *Monell* claim. *See Strauss v. City of Chicago*, 760 F.2d 765, 767-70 (7th Cir. 1985). To state a successful claim under *Monell*, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the [municipality] maintained a policy, custom, or practice that was the moving force behind the constitutional violations." *Dixon v. Buncich*, No. 2:15-CV-458 JD, 2016 WL 2643454, at *3 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Mere legal conclusions will not suffice to survive a motion to

dismiss. *Id.; see also S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 857-58 (N.D. Ill. 2010). Further, one incident of an alleged constitutional violation is insufficient to show a municipal custom or policy. *Hossman v. Blunk*, 784 F.2d 793, 796-97 (7th Cir. 1986).

In this case, the complaint fails to state claims under *Monell*. There are no details or facts whatsoever in the complaint about the alleged policies, customs, or practices, and the allegations only involve the one incident. Plaintiff has merely recited boilerplate phrases, which is insufficient.

Plaintiff argues that *Strauss* is no longer valid law and that his complaint is sufficient to put Defendants on notice of the claims; however, his arguments are simply incorrect.[2] *Strauss* is still good law, as evidenced by the following recent Northern District of Indiana cases: *Cano v. Vasquez*, No. 2:16-cv-401, 2016 WL 7475658, at *2 (N.D. Ind. Dec. 29, 2016) (citing *Strauss* for the "Seventh Circuit precedent [which] requires dismissal of claims based upon bare allegations of custom or policy under *Monell* where a plaintiff has alleged no facts to suggest that the inadequate policies of which he complains actually exist."); *Scott v. Buncich*, No. 2:16-cv-114, 2016 WL 5341309, at *7 (N.D. Ind. Sept 23, 2016)

---

[2] In arguing *Strauss* is no longer good law, Plaintiff cites *Marcavage v. City of Chicago*, 467 F.Supp.2d 823 (7th Cir. 2006) (DE #52 at 8). This is not a Seventh Circuit case, and the correct citation is *Marcavage v. City of Chicago,* 467 F.Supp.2d 823 (N.D. Ill. 2006), which itself was reversed and remanded by *Marcavage v. City of Chicago*, 659 F.3d 626 (7th Cir. 2011).

(citing to *Strauss*, and noting Buncich correctly stated "that a plaintiff asserting a *Monell* claim under section 1983 cannot survive a motion to dismiss when Plaintiff's claim rests solely on conclusory allegations of *de facto* municipal policy and fails to allege any well plead facts of any occurrence or policy other than the single incident involving the plaintiff."); *Nevinger v. Town of Goodland, Indiana*, No. 4:11-cv-25, 2011 WL 2694662, at *4-5 (N.D. Ind. July 12, 2011) (dismissing boilerplate claims where plaintiff failed to allege a single fact outside the incident spurring the complaint).

Indeed, the Seventh Circuit just recently upheld a district court's entrance of judgment on the pleadings where:

> Gill also failed to plead a plausible *Monell* claim. His complaint states that the City of Milwaukee has a *de facto* policy of 'placing an emphasis on clearing cases and convicting suspects over seeking truth,' which led to the coercion of his confession and the concealment of exculpatory evidence. A municipal body may be liable for constitutional violations 'pursuant to a governmental custom even though such custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690-91. To succeed on this *de facto* custom theory, the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents. *Jackson v. Marion Cty.*, 66 F.3d 151, 152 (7th Cir. 1995). At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom. *See McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011).

*Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Plaintiff's complaint fails to do this. It does not provide any other examples of other Merrillville Police Department Officers, or other Lake County Sheriff Department Officers, or Crown Point Police Department officers, taking similar actions to those complained of in this complaint. Indeed, Plaintiff has not alleged any facts outside the single incident alleged in his complaint that would lend toward a plausible inference of a department custom or policy. This is insufficient to withstand a motion to dismiss. *See Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003) (holding "isolated acts of misconduct will not suffice; a series of violations must be presented"); *Sheehan v. Noble Cnty. Sheriff's Dep't*, No. 1:14-cv-324, 2015 WL 3670092, at *4 (N.D. Ind. June 12, 2015) (dismissing failure to train claim where "the complaint makes no mention of any prior instances" of excessive force); *Sanders v. City of Indianapolis*, No. 1:09-cv-622-SEB-JMS, 2010 WL 2484772, at *4 (S.D. Ind. June 11, 2010) (dismissing failure to train claim where complaint "alleges nothing to substantiate" the claim and instead relies upon boilerplate language because "[f]ormulaic assertions such as this are entirely inadequate under the standards articulated in Rule 8 and *Iqbal*.").

Finally, a *Monell* claim cannot be maintained where plaintiff fails to establish an underlying constitutional violation. *Petty v. City of Chicago*, 754 F.3d 416, 424-25 (7th Cir. 2014). Here,

13

the complaint fails to allege that the officers violated Plaintiff's constitutional rights in any way. Rather, the counts against Officer Ridgway assert only state law trespass and slander claims, the complaint does not allege any direct involvement by the Crown Point Officers in violating Plaintiff's constitutional rights, and Count XI does not allege that plaintiff's constitutional rights were deprived as the result of acts pursuant to any express policy, custom, or practice.

Plaintiff attempts to get around these insufficiencies by arguing that "[t]he Complaint, taken as a whole, tells the story of a conspiracy" that violated his rights. (DE #52 at 6.) This argument was directly addressed and rejected by the Court in *Crews v. City of Gary*, No. 2:13-cv-292-PPS-PRC, 2014 WL 6474099, at *6 (N.D. Ind. Nov. 19, 2014), which found a plaintiff:

> [C]an't use the conspiracy claim to get around § 1983's limitation on derivative liability. *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). In other words, *Monell* still applies. *Starks v. City of Waukegan*, 946 F.Supp.2d 780, 787 (N.D. Ill. 2013) ("[T]he only way the City could be liable under [a conspiracy claim] is by virtue of the acts of its employees, yet municipalities cannot be held liable under a *respondeat superior* theory for the acts of their officers"). So, conspiracy or no, [plaintiff] has to plausibly allege that [the municipality] had an established policy or widespread practice that was the moving force behind her injury.

A similar result was reached in *Carr v. City of Chicago*, No. 85 C 8322, 1988 WL 53153, at *2 (N.D. Ill. May 18, 1988), where the

court dismissed a broad assertion of conspiracy involving municipal entities, "find[ing] that plaintiff seeks to impose liability on a *respondeat superior* basis in contravention of the rule enunciated in *Monell*." As such, the conspiracy arguments made by Plaintiff in his memoranda do not save his claim because Defendants cannot be liable on a conspiracy theory under *Monell*.

To the extent Plaintiff has sued Police Chief Joseph Petruch, Sheriff Buncich, and Chief Pete Land in their official capacities, those claims also fail because an official capacity claim is construed as a suit against the municipal entity. It is well settled that a suit against a public employee in his official capacity is equivalent to a suit against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The claims against Sheriff Buncich are really claims against the Lake County Sheriff's Department, the claims against Chief Petruch are really claims against the Merrillville Police Department, and the claims against Chief Pete Land are really claims against the Crown Point Police Department. *See Estate of Szuflita v. City of South Bend, Ind.*, No. 3:10-cv-346, 2012 WL 1095377, at *3 (N.D. Ind. Mar. 30, 2012) (finding a suit against a municipal official in his official capacity is construed as a suit against the municipality). The official capacity claims should therefore be dismissed with prejudice. *See Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).

Violations of 42 U.S.C. 1983: False Arrest

Plaintiff has stated claims of violations of the Fifth and Fourteenth Amendments and 42 U.S.C. section 1982 for false arrest against the Crown Point Police Department (based upon the conduct of Officers Gligic, Ballas, Knezevic, Wilkins, and Burkholder) (Count VI), and the Lake County Sheriff's Department (based upon the conduct of Officers John Doe and John Doe) (Count X).

First, any municipal liability for these claims fails for the reasons articulated above - Plaintiff has not met the specificity requirements for alleging a *Monell* claim. Count X asserts a claim that "Defendants were subject to U.S.C. Sec. 1983" (Compl. ¶ 99) and Count VI contains the same language (*Id.* ¶ 81). These cursory allegations fall far short of pleading that Plaintiff's constitutional rights were deprived as the result of acts pursuant to an express policy, custom or practice. Moreover, Plaintiff fails to support the counts with specific facts indicating a pattern or series of incidents to support the allegation. *Hossman*, 784 F.2d at 796-97. Consequently, these claims are properly dismissed. *See Nevinger*, 2011 WL 2694662, at *5 (dismissing *Monell* claim after concluding that plaintiff "failed to allege a single fact outside of [his own single] incident to support any claim under *Monell*.".

It is difficult to decipher Plaintiff's complaint. Even if he has asserted claims against Officers Gligic, Ballas, Knezevic,

Wilkins, or Burkholer (the "Crown Point Officers") for false arrest, it is undisputed that Plaintiff was arrested by Lake County officers. (DE #1 ¶¶ 50-53.) In order for Defendants to be liable to Plaintiff for his allegedly false arrest, they must have been personally involved in the arrest. *See, e.g., Rascon v. Hardiman*, 803 F.2d 269, 273-74 (7th Cir. 1986). Because Plaintiff has not alleged any personal involvement in his arrest by the Crown Point Officers, any claims against them fail.

To the extent Plaintiff has alleged a section 1983 claim or constitutional claim for false arrest against the Lake County Sheriff Department Officers John Doe, a person arrested pursuant to a facially valid arrest warrant cannot prevail on a section 1983 claim of false arrest. *See, e.g., Baker v. McCollan*, 443 U.S. 137, 143-44 (1979); *Neiman v. Keane*, 232 F.3d 577, 579-80 (7th Cir. 2000); *Brooks v. City of Aurora, Illinois*, 653 F.3d 478, 483 n.5 (7th Cir. 2011). The Plaintiff himself refers to the Lake County officers having "papers" when they arrested him (Compl. ¶ 50), and the Lake County Sheriff Officers attached the arrest warrant as an exhibit to their motion (DE #38-1).[3] The bald allegation in the

---

[3] "Documents referred to in, but not attached to, a plaintiff's complaint that are central to its claim may be considered in ruling on a Rule 12(b)(6) motion if they are attached to the defendant's motion to dismiss." *Duferco Steel v. M/V Kalisti*, 121 F.3d 321 324 n.3 (7th Cir. 1997); *see also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429,431-32 (7th Cir. 1993). Here, the Court can properly consider the arrest warrant attached as Exhibit 1 to the Lake County Sheriff Officers' motion to dismiss (DE #38-1) because the document is referenced in the complaint and attached to Defendants' motion to dismiss.

complaint that Plaintiff's arrest "was made without probable cause or some other legal right" (Compl. ¶ 101) is not supported by any factual allegations whatsoever. Where a false arrest claim is based on a facially valid warrant, there must be a showing that the arresting officers knew that the warrant lacked probable cause. *Williamson v. Curran*, 714 F.3d 432, 443-44 (7th Cir. 2013). There is no such allegation in the complaint that the arresting officers knew the warrant was obtained by deceiving an authorizing body, or that it lacked probable cause.

<u>Violations of 42 U.S.C. 1983: Detention and Confinement</u>

In Count VII, Plaintiff alleges a claim for violation of 42 U.S.C.: detention and confinement, against the Crown Point Police Department.

As found earlier in this decision, any municipal claim against the Crown Point Police Department fails under *Monell* for lack of specificity. There can be no vicarious liability, and Plaintiff does not even plead boilerplate language that there was any custom, policy, or practice for this count.

While it is unclear whether Plaintiff has tried to state a claim against the Crown Point Officers, any such claim would also fail, because the complaint does not allege that any Crown Point officer was involved in his arrest or detention. Consequently, dismissal is warranted on this claim. In sum, all of the federal

18

claims in this case are dismissed with prejudice.

State Law Claims

Jaroscak has also alleged state law claims for trespass and slander against The Times Defendants, Theresa Ridgway, Reginald Edwards, and Aaron Ridgway (Counts I-IV), and trespass against the Crown Point Police Department (Count IX). The Court has granted dismissal in favor of Defendants on all of Plaintiff's federal claims, which were the sole basis for federal jurisdiction in this action. (Compl. ¶ 1.) The parties are not diverse. Therefore, I must decide whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Upon due consideration, the state law claims are dismissed without prejudice because the federal claims have been dismissed prior to trial. 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."); *see also Williams v. Fort Wayne Police Dep't Officers John/Jane Does*, No. 1:12-CV-202, 2012 WL 6727534, at *3 (N.D. Ind. Dec. 27, 2012). As such, Counts I, II, III, IV, and IX are dismissed without prejudice.

CONCLUSION

For the reasons set forth below: the Motions to Dismiss (DE ##

25, 27, 30, 33, 38, and 43) are **GRANTED** as follows: the federal claims (Counts V, VI, VII, VIII, X, and XI) are **DISMISSED WITH PREJUDICE** and the state claims (Counts I, II, III, IV, and IX) are dismissed **WITHOUT PREJUDICE.**

**DATED: October 23, 2017**   /s/ RUDY LOZANO, Judge
   **United States District Court**